**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

GENINE CANNATA, *et al.*,  )
                          )
         Plaintiffs,      )
                          )   2:10-cv-00068-PMP-LRL
v.                        )
                          )   **O R D E R**
WYNDHAM WORLDWIDE         )
CORPORATION, *et al.*,    )
                          )
         Defendants.      )
_____)

This case comes before the court on plaintiffs' Motion to Compel Discrimination Complaints (#106). The court has considered the motion (#106), defendants' Opposition (#148) and plaintiffs' Reply (#153), Declaration (#154) and Exhibits (#155).

Plaintiffs are former Wyndham Worldwide Corporation ("Wyndham") employees, who allege they were subjected to widespread sexual harassment and discrimination in the workplace. They claim, among other things, that Wyndham fostered an environment in which male supervisors and employees engaged in degrading, sexualized behavior toward female employees, and in which male employees were offered more favorable terms and conditions of employment. Mot. (#106) at 2; Complaint (#1) at ¶¶ 3-17. Plaintiffs contend that some male supervisors and employees were repeat or serial harassers who worked at various Wyndham-controlled locations in the southwest region for a number of years. Mot. (#106) at 2-3. One plaintiff alleges that she was discriminated against on the basis of her age.

On April 30, 2010, plaintiffs served a First Set of Requests to Produce Documents and First Set of Interrogatories on Wyndham. This motion concerns Request Nos. 1-8 and Interrogatory Nos. 1-3, which collectively demand information regarding internal and external complaints and grievances alleging discrimination of any kind, but including specifically sex and age discrimination and sexual

harassment, from any of defendants' locations from 2002 to present. Wyndham is an international operation with more than 82,000 employees. Because plaintiffs worked at only three of defendants' properties – the Las Vegas Resort, the West Tropicana "Offsite" Property, and the Regional office – defendants have limited their production to information related only to those locations. Defendants further narrowed the scope of production to include only those complaints specifically related to gender discrimination or sexual harassment where a lawsuit or administrative action was pursued by the employee between 2007 and 2009; because the plaintiff who alleges age discrimination worked only at the Las Vegas Resort location, defendants included age discrimination complaints from only that location. Defendants excluded all other complaints, such as race, national origin, and disability. Opp'n (#148) at 4. Defendants also disclosed all employee complaints of sexual harassment and/or gender discrimination, where a lawsuit or administrative action was pursued by the employee between 2005 and 2009, regarding the Indio, California property where named defendant Jim Friedman worked. Opp'n (#148) at 9. Despite their efforts to resolve the issues without court intervention, the parties continue to disagree as to the appropriate scope – temporal, geographic, and subject matter – of production.

**Discussion**

In a gender discrimination case, plaintiffs have the initial burden of proving a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff has made this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking the adverse employment action. *McDonnell Douglass*, 411 U.S. at 802. If the defendant-employer does so, then the burden shifts back to the plaintiff to demonstrate that the purported reason for the adverse action is a pretext for unlawful discrimination. *Id.* "It is in plaintiff's demonstration of pretext that other complaints of discrimination become relevant." *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 527 (D. Nev. 1997) (citing *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995). Discovery of prior complaints of discrimination is permitted in order to prove that the reasons articulated for an adverse employment action are pretextual. *Jackson v.*

*Montgomery Ward*, 173 F.R.D. at 527.

To prevail on a harassment claim under Title VII, a plaintiff must prove (1) unwelcome conduct (2) because of a protected category (3) that severely or pervasively "permeated" the employee's work environment so as to alter the terms or conditions of employment. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81 (1998). While Title VII does not make employers "automatically liable for sexual harassment by their supervisors," *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986), an employer may be held vicariously liable for its supervisor's sexual harassment unless the employer can prove the "*Ellerth/Faragher*" affirmative defense. The defense is comprised of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Thus, prior instances of reported discrimination and harassment, and what actions defendants took in response to those complaints, are highly relevant to plaintiffs' proof of harassment and to rebutting Wyndham's *Ellerth-Faragher* defense. *See Sackett v. ITC Deltacom, Inc.*, 364 F.Supp.2d 602, 627 (E.D. Tenn. 2005) ("only by evaluating the employer's anti-discrimination policy, its conduct in relation to past and present anti-discrimination training, prevention and handling of other complaints of discrimination, and any discipline that resulted therefrom can the Court evaluate whether the employer has in fact engaged in "'good-faith efforts to comply with Title VII.'").

**Temporal Scope**

Plaintiffs initially requested discovery related to discrimination complaints from 2002 to the present, but they have since narrowed the time frame to 2005-2009. Defendants have limited their production to 2007 through 2009, inasmuch as that period "includes the years that the Plaintiffs' Complaint alleges discriminatory conduct to have occurred." Opp'n (#148) at 10. The court does not find the temporal scope of plaintiffs' requests – 2005 to 2009 – to be unreasonable. One or more plaintiffs began working for defendants as early as 2003, but each worked for Wyndham "at various

3

intervals generally during the 2005-2009 timeframe" and at various locations. Mot. (#106) at 2 (citing Complaint (#1)). Plaintiffs note that they each of them alleged, "throughout her employment with WorldMark, [she] was sexually harassed . . . ," and many have further alleged that "throughout her employment with WorldMark, [she] was subjected to discriminatory policies and practices with respect to sales opportunities, pay and promotion." Reply (#153) at 15, n.8.

This and other courts have allowed discovery of discrimination complaints for the entire time period of the plaintiff's employment. *See e.g. Jackson*, 173 F.R.D. at 528 (limiting time frame to that of plaintiff's employment with defendant); *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D. Pa. 1979) (affirming magistrate judge's order allowing discovery of information related to discrimination complaints made during the time period of plaintiff's employment). Here, plaintiffs have limited the temporal scope to 2005-2009, which falls within their period of employment. Even accepting defendants' position that plaintiffs only allege discriminatory conduct during 2007-2008, courts have found the time period prior and subsequent to the discriminatory conduct to be relevant. *See Horizon Holdings v. Genmar Holdings*, 209 F.R.D. 208, 212 (D. Kan. 2002) (limiting the scope of [requests for documents relating to other claims of sex and pregnancy discrimination] to a period of three years prior to the time the discriminatory conduct was alleged to have occurred and two years after the discriminatory conduct was alleged to have occurred is reasonable and not overly broad."); *see also Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 63 (D.N.J. 1985) ("Courts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action."); *Miles v. Boeing Co.*,154 F.R.D. 117, 119 (E.D. Pa.1994) ("the scope of discovery is commonly extended to a reasonable number of years prior to the defendants' alleged illegal action and also for periods after the alleged discrimination.").

**Geographic Scope**

Although plaintiffs initially sought information regarding complaints from any Wyndham location, they have since narrowed the geographic scope to all Las Vegas facilities and other locations where plaintiffs have been employed from 2005-2009; all locations where plaintiffs' named harassers

4

have been employed between 2005 and 2009; all facilities located within the region which Regional Director of Human Resources, Don Winston ("Winston") oversaw from 2005 to 2009; and (5) complaints made using the "Wyntegrity" hotline between 2005 and 2009.[1]

Plaintiffs explain that the request is intended to discover evidence of intent, motive, pattern or practice and knowledge of repeat harassment within Winston's region. Plaintiffs have alleged that Winston was the principal authority who handled the majority of the plaintiffs' complaints, and he oversaw the named harassers. Plaintiffs specifically allege that Winston repeatedly failed to follow through with discrimination investigations, and further did not discipline appropriately plaintiffs' harassers despite repeated complaints about their conduct. Defendants complain that the locations within Winston's region have changed over the years, so a response to such a request would include complaints unrelated to the locations where plaintiffs and named defendant James Friedman were employed. Opp'n (#148) at 4.

The Ninth Circuit recognizes a need to extend discovery past a Title VII plaintiff's employing unit where an individual plaintiff seeks statistics to demonstrate a pattern of discrimination or disparate treatment to support either her *prima facie* case or her argument that the defendant's articulated reason for the adverse employment decision was pretextual. *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1362-63 (9th Cir.1985); *accord Guruwaya v. Montgomery Ward, Inc.*, 119 F.R.D. 36, 38-39 (N.D.Cal.1988); *see also Garcia v. Courtesy Ford, Inc.*, 2007 WL 1430196 at *3 (W.D. Wash. May 10, 2007). Plaintiffs analogize their need for discrimination complaints to the *Diaz* court's discussion regarding statistics, inasmuch as "the handling of discrimination complaints is highly probative of a pattern or practice of discrimination." Reply (#153) at 19. Plaintiffs contend that regional discovery is appropriate here because Wyndham maintains central control over its policies and practices, including the implementation and reporting procedures regarding discrimination and harassment. *Id.* Thus, it is argued, plaintiffs must be allowed to examine how these policies were applied in the entire region "in

---

[1] In their Reply (#153), plaintiffs state that they agree to limit the scope of the Request No. 5 "to complaints made on the Wyntegrity hotline within Don Winston's region." Reply (#153) at n.10.

order to show that a pattern or practice of discrimination existed, stemming from Wyndham's centralized directives." *Id.*

*Scope Regarding Sex Discrimination and Sexual Harassment Complaints*

The court finds that regional discovery of sex discrimination and sexual harassment complaints is appropriate in this case, because plaintiffs allege a broad, company-wide culture that sanctions and encourages harassment and discrimination. Plaintiffs' definition of the "region" as that overseen by Winston is not appropriate, however, because Winston's regions have contained different locations at different times, including Florida, for example. *See* Opp'n (#148) at 14. Accordingly, by defining the geographic scope of discovery as "Winston's region," such discovery may include complaints from several regions, including those in which no plaintiff was employed. Hence, the geographic scope with regard to all complaints related to gender, sexual harassment, and retaliation will be limited to locations within Wyndham's southwest region, which includes Nevada. Further, such a defined region makes sense insofar as "the standard for determining the geographic scope of discovery focuses on 'the source of the complained discrimination – the employing work unit.'" *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning*, 586 F.Supp.2d 1250,1256 (D. Kan. 2008). The limitation will apply to information responsive to plaintiffs' Request No. 5 regarding the Wyntegrity hotline.

*Scope Regarding Named Harassers*

Plaintiffs allege that their named harassers are serial or repeat harassers, and therefore they are entitled to discovery of relevant complaints pertaining to them irrespective of geography or time period. Although the Ninth Circuit has not specifically addressed the issue, other courts have found an employer's responsibility to prevent future harassment to be heightened where it is dealing with a known serial harasser and therefore on clear notice that the same employee has engaged in inappropriate behavior in the past. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 341 (6th Cir. 2008); *see Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir.2001) (refusing to grant summary judgment to the employer where a genuine issue of material fact existed as to whether the company's failure to warn other employees was negligent due to its knowledge of the harasser's prior violent act); *Sharp v. City*

6

*of Houston*, 164 F.3d 923, 930-32 (5th Cir.1999) (affirming a jury finding that a company was liable for failing to adequately supervise a harasser where the company had constructive knowledge of past complaints); *see also Satterfield v. Karnes,* 736 F.Supp.2d 1138, 1165 (S.D. Ohio 2010) ("it is true that an employer's responsibility to prevent future harassment is greater when it is dealing with a known harasser"); *Rivera Maldonado v. Hospital Alejandro Otero Lopez*, 614 F.Supp.2d 181, 196 (D.P.R. 2008). The court will order defendants to produce documents regarding specific complaints of sex discrimination and/or sexual harassment, which implicate any of the plaintiffs' named harassers, at any of Wyndham's United States locations. Such discovery is relevant to establishing whether defendants were on notice that the named harassers were serial harassers and, to the extent other complaints were filed against these named harassers, what actions the defendants took to prevent future harassment.

*Scope Regarding Age Discrimination Complaints*

Only one plaintiff, Wilk, alleges age discrimination, and she worked at only one location. The geographic scope of production with regard to age discrimination complaints will be limited to only her location of employment.

**Subject Matter**

Although plaintiffs' requests and interrogatories initially sought information regarding any type of discrimination complaints, plaintiffs have since narrowed the scope to include only those involving gender discrimination, sexual harassment, and/or age discrimination, and all specific complaints involving the named harassers. Plaintiffs further contend that they are entitled to discovery of not just those complaints where the employee filed an administrative or court action, but to all internal documents containing informal and formal complaints, including those that do not contain "buzzwords" such as gender, but which when read in their totality are opposing discrimination. Mot. (#106) at 9.

Defendants maintain that they need produce only those complaints of discrimination where a lawsuit or administrative action was pursued. Defendants misstate *Jackson v. Montgomery Ward* to "limit[] discoverable complaints to only those that actually lead to an administrative or judicial action." Opp'n (#148) at 21. As noted by plaintiffs in their reply, the *Jackson* plaintiff's motion to compel

7

production of "copies of complaints of racial discrimination or harassment . . . concerning any person employed by the defendant at Store Number 1555 made to any person employed by the defendant," *Jackson*, 173 F.R.D. at 526 was granted without circumscription by the court.[2] Indeed, the *Jackson* order supports plaintiffs' argument that it is entitled to internal documentation of discrimination complaints because they are relevant to proving pretext. Moreover, to the extent plaintiffs allege that defendants encouraged a culture of a discriminatory and hostile environment, and a pattern or practice of ignoring complaints, evidence of complaints – even those which did not ultimately result in an administrative action or lawsuit – and how they were handled is highly relevant to the issue of pretext, *see Jackson*, 173 F.R.D. at 527, as well as to rebut defendants' *Ellerth-Faragher* defense that they took reasonable care to address and prevent harassment in the workplace. Defendants must produce, consistent with the temporal and geographic limitations as stated herein, complaints, grievances and related documents, the subject matter of which implicate sex discrimination and sexual harassment, and/or age discrimination.

**Undue Burden**

Defendant argues that plaintiffs' discovery requests are unduly burdensome, because defendants do not keep a centralized log of all employee complaints, nor are all personnel files and human resources files located in a central location. Additionally, the defendants represent that the files are not organized by complaint, but "are likely organized by alphabetical order of employee's names – sometimes by complaining employees' names, sometimes by the name of the alleged wrongdoer." Opp'n (#148) at 22. To the extent plaintiffs are permitted to discover complaints that did not result in judicial or administrative action, defendants state they'd have to go through all files maintained by an individual human resources person to find discoverable information. Such concerns do not outweigh

---

[2] Defendants have misapplied a small portion of the *Jackson* court's order regarding an Interrogatory which "asks the defendant to state whether it 'was put on notice that such an action (alleging racial harassment or racial discrimination) would be initiated,' and finding that "as a practical matter, the defendant cannot be expected to recall each instance where a lawsuit or administrative action alleging racial discrimination was threatened, but not pursued." *Jackson*, 173 F.R.D. at 529.

8

plaintiffs' need for the discovery, nor are plaintiffs able to reasonably obtain the information from some other source. *See* Rule 26(b)(2). Furthermore, that compliance with a discovery request may involve expense or may be time consuming, does not, in itself, render it unduly burdensome. *Jackson*, 173 F.R.D. at 529.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiffs' Motion to Compel Discrimination Complaints (#106) is granted to the extent that defendants must produce, not later than August 8, 2011:

(1) all documents and information concerning complaints, whether formal or informal, or made through the Wyntegrity hotline, that implicate or directly allege sex discrimination and/or sexual harassment from within the southwest region, including Nevada, from January 1, 2005 through December 31, 2009, inclusive;

(2) all documents and information concerning complaints, whether formal or informal, which implicate or directly allege sex discrimination and/or sexual harassment by any named alleged harasser in plaintiffs' Complaint from any of its United States locations from January 1, 2005 through December 31, 2009, inclusive;

(3) all documents and information concerning complaints, whether formal or informal, that implicate or directly allege age discrimination at the Las Vegas Resort location, from January 1, 2005 through December 31, 2009, inclusive;

IT IS FURTHER ORDERED that in all other respects the motion (#106) is denied.

Dated this 18th day of July, 2011

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**

9