UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| GENINE CANNATA, et al., | ) | |
| | ) | 2:10-CV-00068-PMP-LRL |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WYNDHAM WORLDWIDE | ) | ORDER |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Presently before the Court are the Motions for Summary Judgment (Doc. ##72-74) of Defendants Wyndham Worldwide Corporation; Wyndham Resort Development Corporation d/b/a WorldMark by Wyndham; Wyndham Vacation Ownership, Inc.; Wyndham Vacation Resorts, Inc.; and WorldMark by Wyndham ("the Wyndham Defendants" or "Wyndham"), filed on December 8, 2010, and the Joinders to the same Motions (Doc. ##75-78) of Defendant James Friedman, filed December 13, 2010. Plaintiff Carolyn Davis filed a Response (Doc. ##118-19) on February 28, 2011. Neither Plaintiff Karen Banks nor Plaintiff JoEllen Sutherland filed an Opposition to the motions brought against them. The Wyndham Defendants filed a Reply to Plaintiff Carolyn Davis's Opposition (Doc. #146) on March 25, 2011, and Replies in support of its motions against Plaintiffs Karen Banks and JoEllen Sutherland (Doc. ##150-51) on March 31, 2011.

**I. BACKGROUND**

    **A. CAROLYN DAVIS**

Plaintiff Carolyn Davis ("Davis") was employed by Defendant WorldMark by Wyndham ("WorldMark") from January 2007 to May 2008. (Notice of Removal (Doc. #1),

1  Ex. 2 ["Compl."] at ¶ 77.)  Davis claims that Defendants negligently retained, supervised,

2  and trained its supervisory and managerial employees and that, while employed at

3  WorldMark, she was the victim of sexual harassment, gender discrimination, retaliation,

4  assault, battery, and intentional infliction of emotional distress.  (Id. at ¶ 76.)

5        On August 24, 2007, Davis contacted attorneys at DeLuca & Associates

6  ("Bankruptcy Counsel") to represent her in a potential voluntary bankruptcy filing.  (Decl.

7  of Carolyn Davis in Support of Br. in Resp. to Defs.' Mot. Summ. J. (Doc. #119-11)

8  ["Davis Decl."] at ¶ 2.)  On April 9, 2008, through Bankruptcy Counsel, Davis filed a

9  voluntary petition for bankruptcy under chapter 13 of the Bankruptcy Code.  (Defs.' Mot.

10  Summ. J. (Doc. #74) ["Defs.' Mot. Davis"], Ex. 1.)  The original petition did not disclose

11  any of Davis's claims against Defendants.  (Id.)  Davis asserts that all of the events giving

12  rise to her claims for retaliation and that some of the conduct underlying her sexual

13  harassment and gender discrimination claims occurred after she signed and filed her chapter

14  13 bankruptcy petition on April 9, 2008.  (Davis Decl. at ¶ 7.)  Davis was terminated by

15  WorldMark on May 13, 2008.  (Compl. at ¶ 98.)  The bankruptcy court confirmed Davis's

16  second chapter 13 plan on July 3, 2008, and the plan was docketed on September 4, 2008.

17  (Defs.' Mot. Davis, Ex. 3.)

18        Davis signed her original Charge of Discrimination on July 21, 2008, and filed it

19  with the Equal Employment Opportunity Commission ("EEOC") on August 20, 2008.

20  (Defs.' Mot. Davis, Ex. 2.)  Within a few days of signing her EEOC charge, on the advice

21  of her civil counsel ("Counsel") Davis contacted Bankruptcy Counsel to notify them of the

22  charge so they could disclose it to the Trustee and update the bankruptcy court if necessary.

23  (Davis Decl. at ¶ 14.)  Davis states that Bankruptcy Counsel's paralegal or receptionist told

24  her that no changes to her schedule needed to be made.  (Id. at ¶ 15.)  On October 16, 2009,

25  Davis's Counsel requested that the EEOC issue Davis a right to sue notice, which the

26  EEOC issued on October 28, 2009.  (Defs.' Mot. Davis, Exs. 5-6.)

1    Davis filed her Title VII lawsuit against Defendants on November 10, 2009.

2 (Compl.) On March 15, 2010, Davis's Counsel again advised her to contact her Bankruptcy

3 Counsel to disclose her civil lawsuit in the bankruptcy proceedings. (Davis Decl. at ¶ 17.)

4 On March 17, 2010, Davis contacted Bankruptcy Counsel for the second time regarding her

5 civil claims. (Id. at 18.) Bankruptcy Counsel again told her that no additional information

6 needed to be provided to the Trustee or the bankruptcy court. (Id.)

7    Davis states that on November 2, 2010, she contacted Bankruptcy Counsel about

8 a motion to dismiss her bankruptcy case due to Bankruptcy Counsel's failure to list a home

9 owners association lien. (Id. at ¶ 19.) Upon receipt of the court notice, Davis called

10 Bankruptcy Counsel's office, and an employee told her that an attorney would return her

11 call, which did not occur. (Id.) On November 4, Davis states that she call Bankruptcy

12 Counsel again and demanded to speak with an attorney. (Id.) The front desk employee

13 with whom Davis spoke told Davis "not to worry about the pending motion" and that Davis

14 "did not need to see any of the attorneys." (Id.) Because of Davis's continued concern and

15 want of clarification regarding the notice she received, she went to Bankruptcy Counsel's

16 office on November 5, 2010, to demand to speak with an attorney. (Id.) At that time, Davis

17 spoke with Attorney Dan Riggs, who told Davis that the front office of Bankruptcy Counsel

18 had made a mistake with Davis's bankruptcy. (Id.)

19    On December 8, 2010, Defendants filed the current Motion for Summary

20 Judgment to bar Davis's civil claims due to her failure to disclose those claims on her

21 bankruptcy schedule. Davis drafted and hand delivered a letter to Bankruptcy Counsel on

22 January 11, 2011, demanding that her civil claims be promptly reported to the bankruptcy

23 court and that the allegations contained in Defendant's motion be addressed. (Decl. of

24 Vincent Aiello in Support of Pl. Carolyn Davis's Resp. to Defs.' Mot. Summ. J. (Doc.

25 #119) ["Aiello Decl."], Ex. C; Davis Decl. at ¶ 21.) Bankruptcy Counsel filed a First

26 Amended Schedule B on behalf of Davis on January 13, 2011. (Aiello Decl., Ex. D.) The

1    Trustee over Davis's estate initially declined to modify Davis's plan or take over

2    prosecution of any of the claims, but reserved the right to recover any assets that might

3    become available to the bankruptcy estate at a later date.  (Davis Decl. at ¶ 25.)

4            On January 26, 2011, the bankruptcy court approved an order confirming Davis's

5    third modified plan and extended her plan for an additional nine months.  (Aiello Decl., Ex.

6    E.)  On January 31, 2011, Davis wrote another letter to Bankruptcy Counsel regarding

7    Bankruptcy Counsel's failure to include the homeowners association lien and a second

8    mortgage on her residence in her modified bankruptcy plan.  (Id., Ex. F.)  In that letter,

9    Davis also requested that Bankruptcy Counsel correct the First Amended Schedule B to

10   properly identify the instant lawsuit on the schedules, including case number, attorney

11   contact information, and appropriate description of the charges.  (Id.)

12           Davis met with Bankruptcy Counsel on February 2, 2011, to discuss these matters

13   in person and to ask Bankruptcy Counsel for an affidavit in support of her contention that,

14   to the extent she was required to disclose the present lawsuit under the Bankruptcy Code,

15   any omission of the lawsuit was unintentional and inadvertent.  (Davis Decl. at ¶¶ 28-29.)

16   Bankruptcy Counsel refused to supply the requested affidavit.  (Id. at ¶ 29.)  On February 3,

17   2011, Bankruptcy Counsel, on behalf of Davis, produced and filed a Second Amended

18   Schedule B, which identified the present lawsuit by case number.  (Aiello Decl., Ex. G.)

19   On March 2, 2011, the Trustee of Davis's bankruptcy estate filed a motion to convert

20   Davis's chapter 13 reorganization bankruptcy to a chapter 7 liquidation bankruptcy.  (Reply

21   in Support of Defs.' Mot. Summ. J. (Doc. #146), Ex. 9.)  The Trustee states that the motion

22   resulted from Davis's failure to disclose timely her civil claims and that, because the claims

23   may have value to the estate, a chapter 7 trustee must examine the extent of the claims and

24   distribute any award of damages to Davis's creditors.  (Id.)

25   ///

26   ///

4

1    **B. KAREN BANKS**

2    Plaintiff Karen Banks ("Banks") was employed by WorldMark from May 26,

3    2008, until July 17, 2008.  (Compl. at ¶ 203.)  Banks claims that Defendants engaged in the

4    negligent retention, supervision, and training of its supervisory and managerial employees

5    and that, as an employee of WorldMark, she was the victim of sexual harassment, gender

6    discrimination, assault, battery, and intentional infliction of emotional distress.  (Id. at

7    ¶ 202.)  On December 29, 2008, Banks filed a formal charge of discrimination with the

8    EEOC.  (Defs.' Mot. Summ. J. (Doc. #72) ["Defs.' Mot. Banks"], Ex. 1.)

9    On May 11, 2009, Banks filed a voluntary petition for bankruptcy under chapter

10   7 of the Bankruptcy Code.  (Defs.' Mot. Banks, Exs. 2-3.)  Banks retained and was

11   represented by legal counsel Gregory A. Ring in filing her bankruptcy petition.  (Id.)  Banks

12   did not disclose her claims against Defendants in her bankruptcy schedules or on the

13   Statement of Financial Affairs that she filed in her bankruptcy proceeding.  (Id., Ex. 3.)

14   On August 14, 2009, Banks signed and filed an amended Charge of

15   Discrimination with the EEOC.  (Id., Ex. 4.)  On September 23, 2009, the bankruptcy court

16   granted Banks a complete discharge of her debts based on filings that did not disclose her

17   civil claims.  (Defs.' Mot. Banks, Ex. 5.)  On October 16, 2009, Banks' civil case counsel

18   requested that the EEOC issue Banks a right to sue notice.  (Id., Ex. 6.)  The EEOC issued

19   Banks a right to sue notice on October 26, 2009, and Banks filed her instant Complaint

20   against Defendants on November 10, 2009.  (Defs.' Mot. Banks, Ex. 6; Compl.)

21   **C. JOELLEN SUTHERLAND**

22   Plaintiff JoEllen Sutherland ("Sutherland") worked at WorldMark from June

23   2007 until July 28, 2008.  (Compl. at ¶ 161.)  Sutherland claims that Defendants engaged in

24   the negligent retention, supervision, and training of its supervisory and managerial

25   employees and that, as an employee of WorldMark, she endured sexual harassment, gender

26   discrimination, constructive discharge, assault, battery, invasion of privacy, and intentional

1  infliction of emotional distress.  (Id. at ¶ 160.)

2          On June 10, 2008, Sutherland filed a voluntary petition for bankruptcy under

3  chapter 7 of the Bankruptcy Code.  (Defs.' Mot. Summ. J. (Doc. #73) ["Defs.' Mot.

4  Sutherland"], Ex. 1.)  She retained and was represented by legal counsel Deluca &

5  Associates in her filing.  (Id.)

6          On July 24, 2008, Sutherland signed her Charge of Discrimination.  (Defs.' Mot.

7  Sutherland, Ex. 2.)  Her civil case counsel ("Counsel") filed the charge with the EEOC on

8  August 4, 2008.  (Id.)

9          On September 17, 2008, the bankruptcy court granted Sutherland a complete

10  discharge of her debts based on filings and schedules that did not disclose her civil claims

11  against Defendants.  (Id., Ex. 4.)  The bankruptcy court closed Sutherland's bankruptcy case

12  on September 22, 2008.  (Id., Ex. 5.)  On December 19, 2008, Sutherland filed an amended

13  charge of discrimination with the EEOC.  (Id., Ex. 3.)

14          On October 16, 2009, Sutherland's Counsel requested that the EEOC issue

15  Sutherland a right to sue notice, which the EEOC issued on October 28, 2009.  (Id., Exs.

16  6-7.)  Sutherland filed her instant Complaint against Defendants on November 10, 2009.

17  (Compl.)

18          Defendants now move for summary judgment on all claims brought by Plaintiffs

19  Davis, Banks, and Sutherland, arguing that the doctrine of judicial estoppel bars them from

20  bringing their civil claims because they did not disclose those claims on their original

21  bankruptcy schedules, nor did they submit amended schedules disclosing their civil claims

22  at the filing of the initial discrimination charges, the filings of the amended discrimination

23  charges, or the filing of the present action.  Defendants argue that Plaintiffs concealed their

24  civil claims, as each had knowledge of her pre-petition claims against Defendants at the

25  time she filed for bankruptcy, yet failed to give notice to the bankruptcy courts, the trustees,

26  and the creditors.  Defendants posit that Plaintiffs concealed their civil claims from the

1  bankruptcy court in bad faith, with hopes of depriving their creditors of and retaining for

2  themselves any award of damages.

3            Specifically with respect to Davis, Defendants assert that she knew of her

4  potential claims at the time she filed for bankruptcy because most of the events that gave

5  rise to her claims occurred before she filed for bankruptcy on April 9, 2008. Furthermore,

6  Defendants maintain that Davis's alleged inadvertent error or mistake in failing to disclose

7  her civil claims is not a valid excuse and that judicial estoppel bars her claims as a matter of

8  law. Defendants argue that Davis disclosed her claims only after Defendants filed the

9  instant motion for summary judgment seeking to bar her claims and that this is evidence of

10 bad faith conduct and playing fast and loose with the judicial system.

11           Davis argues that judicial estoppel should not apply to her case because the

12 omission of her claims on her bankruptcy schedule was inadvertent error. Davis asserts that

13 she contacted her Bankruptcy Counsel on several occasions to inform them of her civil

14 claims and that each time she was told no changes to her schedules needed to be made.

15 Davis also stresses that she did not derive a benefit from failing to disclose her civil claims,

16 nor would allowing her civil claims to go forward be unfair to Defendants because her

17 failure to disclose did not impose a detriment on Defendants. Additionally, because Davis

18 has filed under chapter 13 of the bankruptcy code, she argues that disallowing her civil

19 claims would negatively affect her creditors, who bear no responsibility for the errors in her

20 bankruptcy paperwork. Finally, Davis argues that her civil claims should not be barred

21 because of the importance Congress has placed on the remedial and deterrent functions of

22 Title VII claims. Banks and Sutherland have not filed oppositions or disputed any of the

23 factual allegations made by Defendants in the instant motions against them.

24 **II. DISCUSSION**

25           "[F]ederal law governs the application of judicial estoppel in federal court."

26 Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 603 (9th Cir. 1996). Judicial

1  estoppel aims to protect the integrity of the judicial process and therefore "is an equitable

2  doctrine invoked by a court at its discretion."  Russell v. Rolfs, 893 F.2d 1033, 1037 (9th

3  Cir. 1990); Yanez v. United States, 989 F.2d 323, 326 (9th Cir. 1993).  Judicial estoppel is

4  designed "not only to prevent a party from gaining an advantage by taking inconsistent

5  positions, but also because of 'general consideration[s] of the orderly administration of

6  justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant

7  playing fast and loose with the courts.'"  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d

8  778, 782 (9th Cir. 2001) (quoting Russell, 893 F.2d at 1037).  Judicial estoppel properly is

9  applied to "prevent the deliberate manipulation of the courts."  Helfand v. Gerson, 105 F.3d

10 530, 536 (9th Cir. 1997).  Judicial estoppel is not limited to asserting inconsistent claims

11 within a single lawsuit, but also prohibits litigants from advancing incompatible positions in

12 two separate cases.  Hamilton, 270 F.3d at 783.

13        Courts generally consider three factors when deciding whether to apply the

14 doctrine.  Id. (citing New Hampshire v. Maine, 532 U.S. 742 (2001)).  First, courts

15 determine whether "a party's later position [is] clearly inconsistent with its earlier position."

16 New Hampshire, 532 U.S. at 743.  Second, courts consider whether a litigant successfully

17 persuaded a court to accept one position, so that judicial acceptance of an incompatible

18 position in a subsequent adjudication "would create the perception that either the first or the

19 second court was misled."  Id.  Finally, courts take into account "whether the party seeking

20 to assert an inconsistent position would derive an unfair advantage or impose an unfair

21 detriment on the opposing party if not estopped."  Id.  Courts do not interpret these factors

22 as "inflexible prerequisites or an exhaustive formula" for deciding when to apply judicial

23 estoppel, and they recognize that the specific facts of a particular case may govern

24 application of the doctrine.  Id.  However, the second prong of the this test must be met for

25 judicial estoppel to apply.  Interstate Fire & Casualty Co. v. Underwriters at Lloyd's,

26 London, 139 F.3d 1234, 1239 (9th Cir. 1998); Masayesva v. Hale, 118 F.3d 1371, 1382 (9th

1    Cir. 1997).  Judicial acceptance may be shown by confirmation of a debtor's reorganization

2    plan.  Hamilton, 270 F.3d at 783; Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d

3    555, 557 (9th Cir. 1992).

4            Additionally, judicial estoppel is appropriate when a party's position is

5    "tantamount to a knowing misrepresentation to or even fraud on the court."  Johnson v.

6    Oregon Dep't of Human Resources Rehab. Div., 141 F.3d 1361, 1369 (9th Cir. 1998)

7    (quotation omitted).  However, if "incompatible positions are based not on chicanery, but

8    only on inadvertence or mistake, judicial estoppel does not apply."  Id.; see also General

9    Signal Corp. v. MCI Telecomm. Corp., 66 F.3d 1500, 1505 (9th Cir. 1995) (citing Britton v.

10   Co-op Banking Group, 4 F.3d 742, 744 (9th Cir.1993)) (finding that "threshold"

11   inconsistency alone is insufficient to infer that a litigant has sought to usurp the judicial

12   system).

13           It is unclear what constitutes "inadvertence or mistake," particularly in the

14   context of bankruptcy.  The Fifth Circuit addressed the question of inadvertence in the

15   bankruptcy context, considered national jurisprudence on the issue, and concluded that "the

16   debtor's failure to satisfy its [ongoing, affirmative] statutory disclosure duty is 'inadvertent'

17   only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no

18   motive for their concealment."  In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999)

19   (emphasis omitted).  The disclosure duty in combination with knowledge of facts or motive

20   to conceal give "rise to an inference of intent sufficient to satisfy the [bad faith]

21   requirements of judicial estoppel."  Id. (quotation omitted).  The Tenth, Eighth, Eleventh,

22   and Third Circuits have adopted this reasoning.[1]

23   _____

24       [1]  See, e.g., Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir. 2007) ("Where
     a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at

25   times sub silentio, infer deliberate manipulation."); Stallings v. Hussmann Corp., 447 F.3d 1041, 1048
     (8th Cir. 2006); Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1294 (11th Cir. 2003) ("[D]eliberate

26   or intentional manipulation can be inferred from the record, where the debtor has knowledge of the

1        Further, courts have not distinguished between the failure to disclose in chapter 7

2   versus chapter 13 proceedings.  See e.g., De Leon v. Comcar Indus., Inc., 321 F.3d 1289,

3   1291 (11th Cir. 2003) ("A financial motive to secret assets [in a bankruptcy proceeding]

4   exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the

5   amount to be discounted and repaid."); Eastman v. Union Pac. R.R. Co., 493 F.3d 1151,

6   1159 (10th Cir. 2007) ("The ever present motive to conceal legal claims and reap the

7   financial rewards is undoubtedly why so many of the cases applying judicial estoppel

8   involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy.").

9   Differences between the various chapters of bankruptcy do not have an affect on the

10  applicability of judicial estoppel because all types of bankruptcy require complete and

11  honest disclosure.  De Leon, 321 F.3d at 1291.

12       Although the Ninth Circuit has not explicitly linked the inadvertence factor to a

13  plaintiff's factual knowledge, the case law suggests the Ninth Circuit likewise  would infer

14  bad faith based on a plaintiff's knowledge of the facts supporting the undisclosed claim.

15  See Hamilton, 270 F.3d at 784 ("Judicial estoppel will be imposed when the debtor has

16  knowledge of enough facts to know that a potential cause of action exists during the

17  pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to

18  identify the cause of action as a contingent asset."); Hay, 978 F.2d at 557 ("We recognize

19  that all facts were not known to Desert Mountain at that time, but enough was known to

20  require notification of the existence of the asset to the bankruptcy court.") (emphasis

21  omitted).  Furthermore, in consideration of the doctrine's main purpose of protecting the

22  integrity of the judicial system, the Hamilton Court noted that "the debtor, once he institutes

23

24  _____

25  undisclosed claims and has motive for concealment.") (quotation omitted); Ryan Operations G.P. v.
    Santiam-Midwest Lumber Co., 81 F.3d 355, 363 (3d Cir. 1996) ("This combination of knowledge of
    the claim and motive for concealment in the face of an affirmative duty to disclose gave rise to an
26  inference of intent sufficient to satisfy the [bad faith] requirements of judicial estoppel.").

1    the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits

2    derived by listing all his assets." 270 F.3d at 785. This evinces further motive for

3    concealment, as disclosure of the claim might cause creditors to take a different position

4    with respect to "lifting the stay, and the bankruptcy court might have reached a different

5    decision in that regard." In re Coastal Plains, 179 F.3d at 212-13. Debtors have a

6    continuing duty during bankruptcy proceedings to amend their schedules and add potential

7    claims as assets. Hamilton at 785 (citing In re Coastal Plains, 179 F.3d at 208). The

8    information provided on bankruptcy schedules informs the actions creditors plan to take

9    during the bankruptcy proceeding, and the same information forms the basis upon which the

10    bankruptcy court decides whether to approve a reorganization plan. Id. Thus, "[t]he

11    integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of

12    their assets." Id. (quotation and emphasis omitted).

13          However, when considering invocation of judicial estoppel to bar an undisclosed

14    claim, it is unclear how long the debtor must have asserted inconsistent positions, whether

15    after a certain point it becomes too late to cure nondisclosure (regardless of whether the

16    bankruptcy case has been closed), and whether a party should be prohibited from curing

17    when doing so only after being exposed by an adversary. Scoggins v. Arrow Trucking Co.,

18    92 F. Supp. 2d 1372, 1375-76 (S.D. Ga. 2000) (estopping undisclosed claims because court

19    inferred from temporal proximity of events that efforts to reopen bankruptcy case to

20    disclose those claims were precipitated only by defendant's motion). Despite liberal

21    amendment rules that allow disclosure of an asset at any time before final adjudication of

22    the bankruptcy case, some courts have questioned whether allowing a plaintiff to re-open

23    her bankruptcy case and amend her bankruptcy filings only after someone challenges her

24    failure would encourage a debtor to disclose potential assets only if she is caught concealing

25    them. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002); see also

26    White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 480 (6th Cir. 2010) (stating

that attempts to cure nondisclosure of a claim prior to a defendant's filing of a motion to

dismiss are more significant in showing inadvertence than attempts to cure made after a

defendant's filing of a motion to dismiss).  "This so-called remedy would only diminish the

necessary incentive to provide the bankruptcy court with a truthful disclosure of the

debtor's assets."  Burnes, 291 F.3d at 1288.

    However, the Sixth Circuit viewed the filing of an amendment to cure

nondisclosure after a defendant's filing of a motion for summary judgment on judicial

estoppel grounds evidence of good faith in light of the plaintiffs' "constant affirmative"

attempts[2] to inform the trustee and bankruptcy court of the claims.  Eubanks v. CBSK Fin.

Group, Inc., 385 F.3d 894, 899 n.2 (6th Cir. 2004).  Furthermore, the Ninth Circuit has

ratified the approach of a district court allowing the debtor to reopen its bankruptcy case in

lieu of judicial estoppel, thereby allowing the trustee to administer the undisclosed claims

and to decide whether to retain or abandon the claims.  Dunmore v. United States, 358 F.3d

1107, 1113 n.3 (9th Cir. 2004).  This solution "prevented [the debtor] from deriving an

unfair advantage if not estopped[,]" and "prevented [the debtor] from whipsawing the

Government by undoing the effect of his omission of claims from his bankruptcy schedule."

Id.

    The bankruptcy context raises other, perhaps countervailing, policy

considerations.  The Seventh Circuit has held that judicial estoppel may be inappropriate

despite a showing of the plaintiff's bad faith conduct in failing to disclose claims in

---

  [2]  Specifically, plaintiffs (1) told the bankruptcy trustee about the claim during a meeting and the trustee requested all documents concerning the claim; (2) asked the trustee several times over the course of several months whether he planned to take over the claim on behalf of the estate; (3) "moved the court to set a status conference date regarding Plaintiffs' lender-liability claim against Defendant;" (4) unsuccessfully "moved to allow the Trustee to be substituted as Plaintiff in the legal liability civil action" after filing the action and after the trustee refused to file a motion to abandon the claim; and (5) filed an amended schedule adding the lender liability action to the bankruptcy petition after the defendant filed a motion to dismiss on judicial estoppel grounds.  Eubanks, 385 F.3d at 895-97.

1   bankruptcy proceedings when the debtor's "self-contradiction would have adverse effects

2   on third parties: the creditors." Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir.

3   2006).   The application of judicial estoppel to bar claims that potentially could result in an

4   award of damages to be put toward the plaintiff's debts would have the same consequence

5   for the creditors that successful concealment of the claim would have had. See id. Either

6   way, creditors receive nothing from the suit.  Noting the equitable nature of judicial

7   estoppel, the Seventh Circuit found that invoking it to the detriment of "the victims of

8   bankruptcy fraud is not an equitable application." Id.  Moreover, the civil defendants would

9   receive a windfall for conduct that did not harm them.

10         Finally, public policy considerations should inform equitable judgments. See

11  Golden State Bottling Co., Inc. v. NLRB, 414 U.S. 168, 179-80 (1973).  Congress has

12  stressed that remedying, deterring, and ending discrimination is "of the highest priority."

13  Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968).  The Title VII provisions of

14  the Civil Rights Act of 1964 empower private citizens to challenge discriminatory practices,

15  particularly in the context of employment, and adequate compensation from these suits is

16  necessary to incentivize civil rights plaintiffs to continue to play the role of private attorney

17  general. H.R. Rep. No. 102-40, pt. 2 § 8 (1991).  "Procedural technicalities should not be

18  employed to impede a Title VII claimant from obtaining a judicial hearing on the merits."

19  Ramirez v. Nat'l Distillers & Chem. Corp., 586 F.2d 1315, 1321 (9th Cir. 1978) (citing

20  Love v. Pullman, 404 U.S. 522 (1972)).

21         The case law illustrates that "[m]odern judicial estoppel doctrine is still

22  amorphous and [is] . . . not so much a single doctrine as a set of doctrines that have not

23  emerged into fully coherent theory." Cheng v. K&S Diversified Invs., Inc. (In re Cheng),

24  308 B.R. 448, 453 (B.A.P. 9th Cir. 2004) (quotation omitted).  As an equitable doctrine, a

25  variety of factors "may inform the doctrine's application in specific factual contexts." New

26  Hampshire, 532 U.S. at 751.  The Court, viewing the facts in a light most favorable to

1   Plaintiffs, must balance all the equities and consider the available determinations through

2   the lens of the various policies behind bankruptcy and judicial estoppel.

3          Here, Plaintiff Carolyn Davis began working at WorldMark in January 2007.

4   She initially consulted Bankruptcy Counsel about a potential voluntary filing eight months

5   later in August 2007, and she filed her initial petition in April 2008.  Davis's Complaint

6   alleges that she suffered harassment from the start of her employment with WorldMark and

7   thus knew of at least some of the events underlying her claims before she filed for

8   bankruptcy.  (Compl. ¶¶ 22, 79, 83, 88-90, 95.)  In any case, the bankruptcy court approved

9   two reorganization plans by September 2008, by which time Davis had full knowledge of

10  any and all events underlying her claims, as she was terminated in May 2008.  When Davis

11  filed her initial charge of discrimination in August 2008, and then the present suit over a

12  year later in November 2009, she did not meet her duty to disclose those claims by filing

13  amended bankruptcy schedules, and thus represented inconsistent positions before the

14  bankruptcy court and this Court.  Davis did not amend her petition until approximately

15  thirty-three months after her initial filing, despite Counsel advising her on several occasions

16  to notify Bankruptcy Counsel so that her claims could be disclosed to the Trustee and the

17  bankruptcy court.  Davis enjoyed the benefit of a stay and protection from her creditors

18  during this time.  The facts of this case therefore meet the three factors articulated in

19  Hamilton.

20         Davis's failure to disclose cannot be attributed to unintentional oversight,

21  inadvertence, or mistake.  Davis knew about the relevant events giving rise to her civil

22  claims at the time of her termination in May 2008, and she had motive to conceal those

23  claims from the bankruptcy court because she enjoyed the protection of a stay, and the

24  potential award of damages from her civil claims was omitted from the calculations of her

25  first two reorganization plans.  Furthermore, Davis's civil counsel put her on notice on at

26  least two occasions that she needed to disclose her civil claims to the bankruptcy court and

14

1   the Trustee, and she received additional notice of the need to disclose her claims through

2   the November 2009 motion to dismiss her claims for failure to list a home owners

3   association lien in her bankruptcy proceeding.  Davis made no comparable efforts to those

4   made by the plaintiffs in Eubanks to apprise the bankruptcy court and the trustee of her civil

5   claims.  Davis's few attempts between August 2008 and December 2010 to induce action

6   on the part of Bankruptcy Counsel does not illustrate the kind of constant, affirmative effort

7   that the Sixth Circuit found necessary to preclude judicial estoppel.  Davis is bound by the

8   position asserted by her Bankruptcy Counsel for nearly thirty-four months before

9   Defendants' instant motion finally compelled her to order Bankruptcy Counsel to amend her

10  schedules.  See Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) ("Petitioner

11  voluntarily chose this attorney as his representative in the action, and he cannot now avoid

12  the consequences of the acts or omissions of this freely selected agent."); Barger v. City of

13  Cartersville, Georgia, 348 F.3d 1289, 1295 (11th Cir. 2003) (holding that even though the

14  debtor informed its attorney about its discrimination suit, application of judicial estoppel

15  was appropriate because attorney failed to disclose the suit on the schedule of assets).  The

16  motion filed by the Trustee to convert Davis's bankruptcy from a chapter 13 to a chapter 7

17  case provides sufficient evidence that Davis's failure to disclose her civil claims resulted in

18  a detriment to her creditors and an advantage to Davis.

19         The Ninth Circuit consistently has held that a litigant is barred from advancing

20  claims that were not disclosed in bankruptcy proceedings to protect the integrity of the court

21  system.  However, the Ninth Circuit also has condoned alternative equitable solutions that

22  effectively cure any perceived manipulation of the judicial system.  See Dunmore, 358 F.3d

23  1107.  Neither party here is entitled to a windfall.  The Wyndham Defendants have no stake

24  in Davis's bankruptcy and thus were not prejudiced by her failure to disclose.  It would be

25  inequitable to permit Defendants to escape litigation on the merits of Davis's discrimination

26  claims under these circumstances.  Nor should Davis reap the benefits of a potential award

1   of damages to the detriment of her creditors.  Therefore, the Court will not judicially estop

2   Davis from pursuing her Title VII claims, but will limit any potential award of damages to

3   the amount necessary for the repayment of her creditors as determined by the chapter 7

4   estate trustee.  Davis will receive nothing.  This solution also serves to discourage others

5   not disclosing assets during bankruptcy proceedings.

6          As to Plaintiffs Banks and Sutherland, their failure to file points and authorities

7   in opposition to the Wyndham Defendants' motion constitutes a consent to the granting of

8   the motion.  LR 7-2(d).  Because Plaintiffs Banks and Sutherland have not filed responses

9   to Defendants' respective motions against them, the facts as presented by Defendants in the

10  motions remain undisputed.

11         Neither Plaintiff disputes the fact that her current position is inconsistent with

12  that indicated on her respective bankruptcy filings.  Neither Plaintiff has offered evidence

13  showing that she has moved to have her case reopened to amend her bankruptcy schedules

14  to reflect the civil claims against Defendants, nor has either offered an explanation for her

15  failure to disclose her civil claims during the bankruptcy proceedings.  Thus, for this Court

16  to accept either Plaintiff's current position would create the perception that either this Court

17  or the bankruptcy court was misled.

18         Finally, both Banks and Sutherland filed for bankruptcy under chapter 7 of the

19  bankruptcy code, and their debts were completely discharged by the bankruptcy court.  This

20  Court may infer from the facts that each Plaintiff had sufficient incentive to conceal her

21  civil claims from the bankruptcy court to deprive her creditors from any potential reward

22  from the civil claims against Defendants.  Each Plaintiff derived an unfair benefit from

23  concealment of her claims against Defendants because any award of damages from her civil

24  suit would not be included in the estate and thus would not be applied to the repayment of

25  the creditors.  The Court therefore will judicially estop Banks and Sutherland from pursuing

26  their undisclosed claims and will grant Defendants' motions for summary judgment against

Plaintiffs Banks and Sutherland.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Wyndham Defendants' Motion for Summary Judgment as to Plaintiff Carolyn Davis (Doc. #74) and Defendant James Friedman's Joinder in Defendant Wyndham's Motion for Summary Judgment as to Plaintiff Carolyn Davis (Doc. #76) are hereby DENIED, but any award to Plaintiff Carolyn Davis is to be capped at the amount necessary to repay her creditors as determined by the bankruptcy Trustee.

IT IS FURTHER ORDERED that Wyndham Defendants' Motion for Summary Judgment as to Plaintiff Karen Banks (Doc. #72) and Defendant James Friedman's Joinder to Defendant Wyndham's Motion for Summary Judgment as to Plaintiff Karen Banks (Doc. #78) are hereby GRANTED.

IT IS FURTHER ORDERED that Wyndham Defendants' Motion for Summary Judgment as to Plaintiff JoEllen Sutherland (Doc. #73) and Defendant James Friedman's Joinder to Defendant Wyndham's Motion for Summary Judgment as to Plaintiff JoEllen Sutherland (Doc. #77) are hereby GRANTED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants Wyndham Worldwide Corporation; Wyndham Resort Development Corporation d/b/a WorldMark by Wyndham; Wyndham Vacation Ownership, Inc.; Wyndham Vacation Resorts, Inc.; WorldMark by Wyndham; and James Friedman and against Plaintiffs Karen Banks and JoEllen Sutherland.

DATED: July 21, 2011

_____
PHILIP M. PRO
United States District Judge

17