1

2              **UNITED STATES DISTRICT COURT**

3                  **DISTRICT OF NEVADA**

4                          * * *

5    GENINE CANNATA, *et al.*,                    )
                                                  )
6                        Plaintiff,               )
                                                  )
7    v.                                           )      2:10-cv-00068-PMP -VCF
                                                  )
8    WYNDHAM WORLDWIDE                             )      **O R D E R**
     CORPORATION, *et al.*,                       )
9                                                 )
                                                  )
10                       Defendants.              )
     _____         )

11

12          Before the court are defendants' Motion For Protective Order Regarding Deposition of Third-

13   Party Rich Folk (#198) and Motion To Designate Confidential Material (#222).  Also before the court

14   are plaintiffs' Affidavit of Fees and Costs (#210) and Motion To Compel Documents (#225).  The court

     conducted a hearing on these matters on November 17, 2011.

15
     **Background**
16
            Plaintiffs Genine Cannata, Carolyn Davis, Joan E. Lewis, Sheila A. Rhodes, JoEllen Sutherland,
17
     Elizabeth Atkinson, Karen Banks, Patricia Calvin, Connie Post, Carla Rains[1], and Lori Wilk filed their
18
     complaint (#1, #1-1, and #1-2) against defendants on November 10, 2009, in the Eighth Judicial District
19
     Court, Clark County, Nevada.  The action was removed to this court on January 19, 2010.  (#1).
20
            Plaintiffs assert claims for (1) hostile work environment/sexual harassment in violation of NRS
21
     § 613.330, (2) gender discrimination in violation of NRS § 613.330, (3) retaliation in violation of NRS
22
     § 613.340, (4) hostile work environment/sexual harassment in violation of Title VII of the Civil Rights
23

24   _____

25        [1]  Elizabeth Atkinson and the defendants signed a stipulation to dismiss all of her claims on March 4, 2010
     (#31). Summary judgment was granted in favor of defendants, dismissing Karen Banks and JoEllen Sutherland's claims
     on July 21, 2011, for failure to disclose this action in their respective bankruptcies.  (#187).  Carla Rains dismissed all
26   her claims on July 26, 2011 (#190).

Act of 1964, 42 U.S.C. § 2000(e), (5) gender discrimination in violation of Title VII, (6) retaliation in violation of Title VII, (7) discrimination on the basis of age in violation of NRS § 613.330, (8) age discrimination in violation of the Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621, (9) constructive discharge, (10) assault against corporate defendants, (11) battery against corporate defendants, (12) assault against defendant Friedman, (13) battery against defendant Friedman, (14) invasion of privacy, (15) intentional infliction of emotional distress against corporate defendants, (16) intentional infliction of emotional distress against defendant Friedman, and (17) negligent retention, supervision and training of supervisors and managers.  (#1, #1-1, #1-2)

In the complaint, plaintiffs, who are former female employees of defendant Wyndham WorldWide Corporation /WorldMark by Wyndham (hereinafter "Wyndham"), allege that during their employment at Wyndham, they were subjected to "systematic employment discrimination based on their gender." *Id.*  Plaintiffs contend that they were, among other things, "forced to work in [a] hostile work environment resulting from severe or pervasive sexual harassment in the workplace." *Id.*  Wyndham's management is allegedly largely male-dominated, and due to this, plaintiffs assert, the "management has permitted a norm of sexual interaction between female employees and their male supervisors," which "has become an expectation imposed on female employees – an expectation [p]laintiffs have refused to meet, to their detriment." *Id.*  Plaintiffs also allege that male managers of Wyndham have "frequently ogle[d] at and touch[ed] female employees' buttocks, breasts, and legs." *Id.*  It is plaintiffs' position that Wyndham "knew or should have known that members of management were "repeat harassers" who were given unfettered authority and opportunity to subject numerous female employees to severe or pervasive forms of sexual harassment." *Id.*

Plaintiffs name the corporation itself and its subsidiaries as defendants, as well as "James Friedman, and DOES, I through X, and ROE BUSINESS ENTITIES, I through X." *Id.* Although the complaint names Friedman as the only individual defendant, its allegations specifically name several other managers or high ranking supervisors that allegedly acted inappropriately. *Id.*  The complaint

2

names Senior Sales Manager Carl Alfano, Director of Marketing Mark Weaver, Manager Derek Devers, Manager Dan Belchar, Manager Vince Lewis, Manager Jeff Rice, Manger Sergio Scozia, HR Director Don Winston, Senior Director Carter Lee, Executive Vice President of Sales and Marketing Rich Folk, In-House Project Manager Jeff Milhollen, Project Director Stephen Connolly, Floor Manager Jim Nelson, Sales Representative Tito Checa, Team Manager Dan Sayadoff, Manager Caesar Martos, Director of HR Karen Case, Regional Vice President Alan Banks, Corporate HR Linda Padia, and Sales Manager James McGlafin.  *Id.*

**Motion For Protective Order (#198)**

In the present motion, defendants ask this court to "preclude [p]laintiffs from inquiring about Mr. Folk's private and consensual relationships at Mr. Folk's deposition or conducting any other discovery which seeks information regarding his consensual sexual relationships." (#198).  Defendants assert that information of this sort is irrelevant to plaintiffs' claims, unlikely to lead to admissible evidence, and will only cause Mr. Folk "unnecessary annoyance, embarrassment and oppression."  *Id.* Plaintiffs oppose the request, and assert that this information is relevant to plaintiffs' hostile work environment claims and rebutting Wyndham's *Ellerth/Faragher* affirmative defense to liability. (#208). Plaintiffs also contend that the information is relevant to "decipher whether Wyndham aided by [failing to adhere to] its heightened duty to prevent serial harassment by repeat players."  *Id.*

A.    **Relevant Facts**

On July 20, 2011, plaintiffs noticed eight depositions, including the deposition of Executive Vice President of Sales and Marketing for the Wyndham Vacation Ownership, Mr. Rich Folk.  (#198-1 Exhibit 1).  On July 28, 2011, the defendants sent an email to plaintiffs stating that they objected to the deposition of Mr. Folk in as far as the line of questioning involves Mr. Folk's consensual relationships. (#198-1 Exhibit 3).  Defendants argued that the deposition was "outside the proper scope of discovery," as Mr. Folk is not accused of sexual harassment by any of the plaintiffs.  *Id.*  Defendants requested that if plaintiffs thought questioning Mr. Folk was relevant to the action, then plaintiffs were to demonstrate

how the consensual relationships were relevant by August 1, 2011. *Id.* On the same day, plaintiffs explained to defendants that it was their position that since this is a hostile work environment case, it is relevant how the plaintiffs' subjectively viewed the work environment, including their knowledge of Mr. Folk and others' relationships with women employees, how HR reacted to Mr. Folk's indiscretions, and how Mr. Folk supervised and interacted with some of the plaintiffs. (#198-1 Exhibit 4).

On August 4, 2011, the parties conducted a telephonic meet and confer. (#198-1 Exhibit 1). The parties were unable to reach an agreement, and the deposition of Mr. Folk was vacated, contingent on defendants filing the present motion. *Id.*

**B.    Argument**

The defendants argue that third-party witness Mr. Folk's relationships with employees, and information relating thereto, should not be a permitted topic for his deposition. (#198). They support this argument by asserting that such information is irrelevant because only one of the plaintiffs mention Mr. Folk's relationships, Mr. Folk is not accused of sexual harassment in the complaint, and there is zero evidence that the relationships were anything but consensual. *Id.* The complaint mentions Mr. Folk's name twice, and only alleges that Mr. Folk was engaging in sexual activities with female employees, and that he impregnated at least two female employees. *Id.* Further, in the plaintiffs' depositions, they did not name Mr. Folk as one who sexually harassed them, and even admitted that his relationships were consensual. *Id.* Defendants argue that since none of the plaintiffs claim Mr. Folk's relationships offended them, information relating to the relationships is not relevant to the hostile work environment claim. *Id.*

In opposition to the motion, plaintiffs contend that they are not alleging that Mr. Folk's multiple sexual relationships by themselves created a hostile work environment, but that they *contributed* to the hostile work environment. (#208). In the complaint (#1, #1-1, and #1-2), the plaintiffs allege that Wyndham "has permitted a norm of sexual interaction between female employees and their male supervisors, which...has become an expectation imposed on female employees..." Plaintiffs also allege

that the Wyndham defendants knew or should have known that key members of management were "repeat harassers," who were given "unfettered authority and opportunity to subject numerous female employees to severe or pervasive forms of sexual harassment." *Id.* Specific to Mr. Folk, plaintiffs contend that one of Mr. Folk's relationships resulted in another named executive, Carter Lee, being issued a written warning for giving a female inferior company funds at the direction of Folk to finance an abortion. (#208). This action, however, was allegedly never addressed and Mr. Folk was allegedly never disciplined by the company. *Id.*

Plaintiff Ms. Calvin was Mr. Folk's assistant during the relevant time period. *Id.* Ms. Calvin alleges that she witnessed women who agreed to be sexually exploited receive perks. *Id.* Mr. Folk allegedly provided his sexual partners with "special duties, car access, SPIF money, and free living arrangements." *Id.* The sexual partners would be given tasks that Ms. Calvin would have normally done, and would replace Ms. Calvin in meetings, even though Ms. Calvin was Mr. Folk's executive assistant. *Id.* Ms. Calvin, as Mr. Folk's assistant, was ordered to review expense reports approved by Mr. Folk, that financed his "sexual escapades and inappropriate behavior." *Id.* Ms. Calvin alleges that when she tried to file a complaint about this behavior with HR Manager, Karen Case, the word spread, and Carter Lee and defendant Friedman told Ms. Calvin's husband that his "wife needs to keep her mouth shut," or they both would loose their jobs. *Id.*

Therefore, plaintiffs argue that Mr. Folk's sexual relationships directly relate to "whether Wyndham took reasonable steps to prevent sexual harassment, whether [Mr.] Folk and Carter Lee should have been terminated,...and whether [plaintiff] Ms. Calvin was retaliated against in part because she knew "too much" about [Mr.] Folk's inappropriate activities." *Id.*

## C.    Discussion

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense..." During discovery, "[a] party may, by oral questions, depose any person, including a party, without leave of court..." Fed. R. Civ.

5

P. 30(a)(1).  Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes.  See *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).  For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence.  *Id.*

If the responding party refuses to provide discovery, "the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  However, the court must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P.  26(b)(2)(C)(I).  If the responding party believes that the discovery sought would cause "annoyance, embarrassment, oppression or undue burden or expense," the party may move for an order from the court "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery matters."  Fed. R. Civ. P. 26(c)(1)(D).

Here, plaintiffs claim that Wyndham's "management has permitted a norm of sexual interaction between female employees and their male supervisors," and that Mr. Folk, specifically, had relationships with and impregnated at least two female employees.  (#1, #1-1, and #1-2).  Plaintiffs also allege that Mr. Folk approved company funds to be used for one of the women's abortion, and that the company never disciplined him for it.  *Id.*  The plaintiff's contend that they were looked over, and that the "paramours" were given special treatment by the male managers, including Mr. Folk, that they were sexually involved in.  *Id.*

Overall, it is alleged that Wyndham added to the hostile work environment when it failed to adhere to its "heightened duty to prevent serial harassment by repeat players," and even condoned such actions.  *Id.*  Therefore, Mr. Folk's relationships with female employees, whether consensual or not, are relevant to the allegations contained in the complaint, despite the fact that he himself is not a defendant.  See *Oppenheimer Fund*, 437 U.S. 340, 351(holding that relevance for discovery purposes is considerable broader.).  Plaintiffs may take Mr Folk's deposition, and may inquire as to his relationships

6

with female employees.  To avoid unnecessary annoyance or embarrassment, the transcript of Mr. Folk's deposition will be designated confidential pursuant to the existing confidentiality order and remain sealed unless the court orders otherwise.  *See* Fed. R. Civ. P. 26(c)(1)(D) and (#125 Protective Order).

**Affidavit of Fees and Costs Pursuant to Court Order (#210)**

On August 25, 2011, the court ordered (#205) defendants to pay the reasonable expenses associated with the plaintiffs having to file an emergency motion for an interim sequestration order and to quash third party subpoenas (#184).  The court gave plaintiffs ten days from the entry of the order to file a detailed affidavit of fees and costs, and gave defendants ten days thereafter to file a response to the affidavit.  (#205).  The plaintiffs filed the present affidavit (#210) on September 6, 2011. Defendants filed their response (#217) on September 19, 2011, and plaintiffs filed a reply (#220) on September 20, 2011.

Attorney Jill Sullivan declared in the affidavit of fees and costs (#210) that the total fees and costs is $20,936.25, and that she "reviewed and edited the billing report" and confirmed their truth. Attached to the affidavit, is an itemized chart (#210-1 Exhibit A) detailing what work was performed, who performed the work, how many hours were consumed, the rate of the attorney, and any additional costs. The defendants object to the amount in the affidavit (#217), and assert that the plaintiffs couldn't have spent 64.20 hours on the second motion to quash, when their arguments were simply "cut-and-past[ed]" from the first motion to quash.  Defendants contend that the affidavit and the chart fail to show "any support for the reasonableness of the fees claimed or their mind-boggling hourly rates..." (#217). The defendants ask this court to "adjust [p]laintiffs' proposed hourly rates, costs and fees to a reasonable amount commensurate with the amount of effort actually expended by [p]laintiffs." *Id.*

Plaintiffs support their affidavit of fees and costs (#220), and ask this court to grant the amount in full.  They contend that due to the defendants' sanctionable behavior, they were forced to "exchange several internal and external emails; conduct internal conference calls; review the [c]ourt's order; engage in futile meet and confer efforts; mail correspondence to the third parties altering them to

[p]laintiffs' objections to the subpoenas; review documents received pursuant to the subpoenas; request an emergency sequestration order, draft and file a motion with several exhibits; engage in extensive review of case law cited by both parties, including additional case law cited by Wyndham in its opposition brief; and draft and file a Reply in response to several meritless arguments raised by Wyndham."  (#220).

As the court recognized in its original order (#205), the plaintiffs are entitled to reasonable fees and costs associated with filing the second motion to quash.  The court finds that sanctions in the amount of $7,500 are appropriate.  Defendant Wyndham is ordered to issue a check in the amount of $5,000, and Littler Mendelson is ordered to issue a check in the amount of $2,500.  Checks shall be issued within fourteen days from entry of this order.

**Motion To Designate Confidential Material (#222)**

On March 3, 2011, the court entered a protective order regarding confidential information. (#125).  In that order, the court specifically stated that a party or non-party may designate as "confidential" any document or response to discovery which that party or non-party considers in good faith to contain...information implicating third party privacy rights..."  *Id.*  Prior to entering this protective order, the court considered a proposed protective order, along with arguments from both parties. (#117).  In addressing these arguments and deciding upon an appropriate protective order, the court held that Judge Cook's neutral protective order was "superior," because, "as modified, it [is] tailored to protect third party privacy rights..."  *Id.*  Pursuant to the court's protective order (#125), if a party wishes to dispute the confidentiality of the document, the party may give written notice of the objection to the party or non-party who designated the material.  The designee then has twenty-five (25) days from the date of receipt to apply to the court for an order designating the material as confidential. (#125).

Defendants designated a document, identified as WRDC.Cannata001019-22 (Exhibit 1 submitted to the court) (hereinafter "the document"), as confidential pursuant to the court's order

(#125).  The plaintiffs challenged the confidentiality of the document, and sent an email to defendants stating their position.  (#222-1 Exhibit 2).  Plaintiffs submitted the document as an exhibit to their opposition to defendants' motion for protective order regarding the deposition of Mr. Folk, and filed it under seal.  The document is of relevance to the present litigation, because it contains an employee's interview, where she states her knowledge of Mr. Folk's relationships and the alleged discrepancies surrounding the same.  (Exhibit 1).

In the present motion (#222), defendants ask this court to uphold the confidential designation of the document in accordance with the parameters set forth in the protective order (#125).  Defendants argue that the interview contains information that implicates third party privacy rights which should be "fiercely protected" and were specifically protected by this court's order.  (#222).  Defendants assert that the protective order was designed to protect these parties' privacy rights, and that the designation would not prejudice the plaintiffs in any manner.  *Id.*  The plaintiffs would be permitted to use this interview for any legitimate purposes if the court upheld the designation, and the only thing they would be precluded from doing, would be exploiting the non-parties and slandering their names.  *Id.*

Plaintiffs reassert their position that the interview should not be deem confidential.  (#227).  The plaintiffs contend that the defendants have failed to meet their burden of showing "good cause" to designate the interview confidential, and that they have failed to demonstrate that any "harm or prejudice" would result if the document is disclosed.  (#227).  Further, plaintiffs argue that any privacy interest can be protected by simply redacting the document.  *Id.*

The situation mentioned in the document was referenced briefly in the complaint (#1-1 page 25), but no female's name was disclosed.  The plaintiff's opposition to the motion for protective order mentions the situation**,** and discloses the initials of one woman alleged to have been impregnated by Mr. Folk.  (#208 page 2).  The opposition, however, was not filed under seal, rather the filed version contained redacted sections referencing and quoting from the document in question.  *Id* at page 5 and 6.  The quoted sections were redacted as to not bear the name of the individual interviewed and what

that individual stated.  *Id.*

As noted above, despite the fact that Mr. Folk is not a named party, his actions, the knowledge thereof, and any disciplinary steps taken are relevant to the instant action.  As also noted, the court recognizes the confidential and personal nature of the allegations surrounding Mr. Folk and the non-party women alleged to have been sexually involved with him.  Therefore, the court upholds the confidential designation of the document to protect, during the pretrial proceedings in this action, the privacy interests of both party and non-party individuals, pursuant to the court's protective order (#125).

**Motion To Compel Documents (#225)**

Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are "relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b).  Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes*.*  See *Oppenheimer Fund*, 437 U.S. 340, 351 (citation omitted).  For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence.  *Id.*  In responding to Rule 34 requests, "the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  Pursuant to Rule 37(a)(3)(B)(iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).

On May 5, 2010, the plaintiffs served defendants with document requests.  (#225).  In response, plaintiffs contend, defendants provided inadequate, boilerplate, deficient responses.  *Id.*  Plaintiffs assert that they attempted to resolve "*numerous* discovery disputes with Wyndham, to no avail."  *Id.*  The fact-discovery deadline as of the date of filing the motion to compel was set for November 14, 2011.  *Id.*  Therefore, in addition to compelling defendants to provide adequate responses to the discovery requests, the plaintiffs ask this court to amend the scheduling order to accommodate production of documents

10

and depositions of Wyndham agents. *Id.* There are several requests that plaintiffs contend were not sufficiently responded to, and plaintiffs have organized them according to topic. *Id.* The court will discuss each separately below.

### A.    Corporate Structure and Organizational Charts

Requests 28, 30-35, and 176 seek documents explaining the relationship, control, reporting structures, and hierarchies between Wyndham entities. (#225). Plaintiffs assert that defendants provided "boilerplate objections" and referred to Wyndham's Form 10-K, which allegedly does not "adequately explain the control interrelationships by and among the various...entities." *Id.* Rather, plaintiffs contend, the Form 10-K provides only "basic employment histories of each executive officer and generic references to its corporate structure." *Id.* Defendants argue in their opposition (#231), that the 10-K statements for 2006 through 2009 clearly respond to the request, because they set forth the relationship between all the entities, explain the functions and relationships, and identify the Board of Directors and executive teams of various entities. Defendants admit that the responses do not specifically set out the chain of command, but assert that the requests did not seek such information. (#231). Defendants argue that many requests are duplicative, vague, and over broad, and that if the plaintiffs would engage in meaningful meet and confers, the present motion would not be necessary. *Id.*

As the court has already determined in its order denying the motion for protective order (#197), information concerning Wyndham's corporate structure "is relevant and discoverable as it relates to the potential liability of each corporate entity." *Oppenheimer Fund*, 437 U.S. 340, 351. The motion is granted in this respect. *All* documents responsive to plaintiffs' request must be provided and/or supplemented by the defendants within fourteen days from the entry of this order. As the defendants assert that the parties have not actually met and conferred in good faith, the parties are required to meet and confer in a good faith effort to specify what the specific requests seek, what has been provided thus far that is responsive, and to eliminate any duplicative requests.

**B.      Anti-Discrimination Training**

Plaintiffs' request No. 85 seeks documents relating to *who* attended anti-discrimination/harassment trainings, *who* conducted the trainings, *where* and *when* the trainings were held, and the content of the trainings.  (#225).  Defendants responded with a general Business Compliance and Ethics presentation and multiple copies of the 2004 and 2008 anti-harassment presentations.  *Id.*  Plaintiffs assert that the response is insufficient because it does not encompass training materials for the *full* time period and does not specify the *who, what, when,* and *where* regarding the trainings.  *Id.*  Plaintiffs contend that this information is relevant because it relates to the employer liability prong of plaintiffs' hostile work environment claim.  *Id.*  Additionally, plaintiffs seek sign-in sheets for all employees for the trainings, as they suspect that certain managers and supervisors didn't actually attend the trainings.  *Id.*  Despite defendants assertion that it would investigate the matter, no supplements have been provided.  *Id.*

Defendants claim that they have produced over 300 documents relating to the anti-discrimination and harassment trainings, from 2005 through the present. (#231).  The request for the sign-in sheets, defendants assert, is over broad, irrelevant and unduly burdensome.  *Id.*  The acknowledgments of the employees are kept in each individual file, and not located in a central location.  *Id.*  Defendants argue that the fact that employees not involved in the litigation attended the trainings has no relevance to the instant action.  *Id.*  Since, the parties that are involved already admitted in their depositions that they received the information and were made aware of their rights and obligations, the request is duplicative and does not support plaintiffs' assumption that certain managers didn't attend.  *Id.*

The court finds that the documents relating to anti-discrimination and harassment training and the dissemination of the same are relevant to whether the company acted in accordance with the laws and adequately informed their employees. See  *Oppenheimer Fund*, 437 U.S. 340, 351.  The fact of whether or not named managers, employees, and supervisors attended these trainings and whether the sign-in sheets were fabricated, as plaintiffs allege, is relevant to demonstrating if defendant Wyndham

12

"exercised reasonable care to avoid harassment and to eliminate it when it might occur." *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).   Further, as the court previously held, the fact that "compliance with a discovery request may involve expense or may be time consuming, does not, in itself, render it unduly burdensome." (#183).  Defendants shall provide *all* documents responsive to plaintiffs' request for the named parties, managers, and supervisors for the relevant time period, 2005 - 2009, within fourteen days from the entry of this order.

### C.     James Friedman's Termination

Request 90 seeks information relating to James Friedman's termination, including personnel action forms, memorandums, and any severance or separation agreements. (#225).  Defendants, in response, referred plaintiffs to Friedman's personnel file that was produced by Friedman himself.  *Id.* No supplement has been provided, and plaintiffs received only one document involving a sexual harassment complaint against him *after* the court ordered the same.  *Id.*  Plaintiffs assert that the response does not identify the authors of the documents or who conducted the investigation interviews. *Id.*  Defendants contend that they have supplemented their response to include the investigation memorandum.  (#231).  However, as the request did not seek the authors of any of the documents, defendants assert that they are not required to provide them.  *Id.*  Defendants further contend that Mr. Friedman did not receive a severance agreement, so no production thereof is possible.  *Id.*

As an initial matter, the court finds any documents relating to defendant Friedman's termination and the events surrounding it to be relevant.  See *Oppenheimer Fund*, 437 U.S. 340, 351.  He is a named defendant in this case and is accused of sexually harassing a number of inferior employees.  *Id.*  The court agrees with plaintiffs that a personnel file disclosed from Mr. Friedman himself cannot be complete and/or sufficient.  Wyndham itself would have access to emails relating to his termination and correspondence surrounding the same, that would not be contained in the personnel file Mr. Friedman possesses.  Defendants shall provide all documents responsive to the request, including documents revealing the parties involved in his termination and the events leading up to the termination, within

13

fourteen days from the entry of this order.

**D.     James Friedman's Emails Pertaining To Plaintiffs**

In request No. 91, plaintiffs seek emails sent or received by defendant Friedman that pertain to plaintiffs. (#225). Defendants claimed that they would produce the emails, but have not done so. *Id.* Plaintiffs ask this court to order the production of the emails in their native form, with all metadata intact. *Id.* Defendants do not refuse to produce the emails, but due to the sheer volume requested, contend that they have been in the process of identifying responsive documents. (#231). Defendants further assert that the parties would be meeting in October and would provide a joint letter to the court relating to the electronic discovery plan, which would help them ascertain the scope of required email production. No such letter has been received.

Relevance, as stated previously, is not an issue when it comes to defendant Friedman and the plaintiffs. See *Oppenheimer Fund*, 437 U.S. 340, 351. As plaintiffs contend that defendants have stated several times that they have emails and are going to be producing them, but have failed to, defendants' argument that they need more time concerns the court. Defendants have been given sufficient time to locate these emails. The court recognizes the large number of emails that may be responsive to the request, and orders the defendants to produce such emails, in their native form with all metadata intact, **as they acquire them**, and to notify plaintiffs when they believe that they have produced *all* emails. The court expects this production will be substantially complete within fourteen days from the entry of this order.

**E.     Employment Documents Regarding Various Actors**

Plaintiffs assert that several documents are still missing from the response to requests 94-117. (#225). These include discipline documents and anti-sexual harassment training acknowledgment forms for Jeff Rice, Cart Lee, Dan Belchar, and Carl Alfano. *Id.* Further, performance evaluations, job descriptions, and discussion forms have not been produced for several other named individuals. *Id.* Defendants contend that they have provided documents they have available, but that for some

1   employees, job descriptions are unavailable.  (#231).  Further, defendants assert that during meet and

2   confers, they have asked how certain employees employment application, for example, is relevant to

3   the action, but have received no response.

4          It appears to the court that the parties, once again, have failed to engage in meaningful meet and

5   confers regarding these requests.  The parties are ordered to meet and confer and to, in good faith,

6   articulate what documents requested actually exist, and how certain documents are relevant and

7   discoverable.  If the parties are unable to resolve the issue, defendants shall provide a list of responsive

8   documents that they are refusing to produce, and file a motion for protective order within thirty days

9   from the date of the meet and confer.  With regards to the job descriptions that allegedly do not exist,

10  the defendants and their attorneys are to provide the court and opposing counsel with a certification to

11  that effect within fourteen days from the entry of this order.

12         **F.      Employment Documents and Sales Data**

13         In requests No 126, 127, 164 and 195, the plaintiffs seek employment related documents for

14  plaintiffs as well as their co-workers who performed the same jobs as they did.  (#225).  This includes,

15  sales records, resumes, awards, promotions, disciplinary notices, and contracts.  *Id.*  These documents

16  are relevant because they allow the plaintiffs to assess if other employees were being treated differently

17  and/or were given positions that they were not suitable for due to their sexual interactions with

18  superiors.  *Id.*  In response to these requests, defendants provided sales data that is not searchable, and

19  failed to include sales rankings demonstrating how the plaintiffs and their peers comparatively

20  performed.  *Id.*

21         Defendants argue that the plaintiffs' requests include seventy-seven employees, many of whom

22  are not mentioned in the complaint, are not alleged wrong-doers, and have no relevance to the instant

23  action.  (#231).  Further, defendants contend that plaintiffs have failed to provide last names for several

24  individuals, and failed to demonstrate whether these employees worked with plaintiffs or the supervisors

25  named, or if they even worked during the same time period.  *Id.*  The defendants argue that the plaintiffs

26

are not entitled to personnel files for everyone ever employed by Wyndham. *Id.* The court agrees. The parties have obviously not met and conferred in good faith regarding these requests. The parties are ordered to do so, in an attempt to narrow the list of names and/or define who the parties are and how they relate to the present action. If, after this, plaintiffs have not received information they seek regarding certain individuals, they may file a motion to compel within thirty days from the date of the meet and confer.

**G.     Plaintiffs', Plaintiffs' Comparators, and Peer Compensation, Sales Data and Sales Rotation or "Rotor"**

The plaintiffs' requests Nos. 128-152, 154, 179, and 195-198 seek information relating to the plaintiffs', their comparators' and coworkers' total compensation, sales results, and sales rotation/schedules. (#225). Plaintiffs contend that defendants have only produced the work history of the comparators, which do not contain the sales data, sales ranking, and compensation related records. *Id.* Defendants do not oppose providing the requested documents. (#231). Defendants only assert that documents relating to some of the *thirty* individuals listed have already been produced, some, once again, are identified by their first names only, and defendants are unable to ascertain *who* plaintiffs believe to be "comparators." *Id.* Once plaintiffs cure these deficiencies, defendants do not object to producing documents relating to those comparator employees. *Id.*

The parties have not adequately met and conferred on these issues. Defendants are uncertain as to who the requests pertain, and are unable to provide documents, because they only have first names of several individuals. These issues could be resolved in a meaningful good faith meet and confer. The parties are ordered to engage in such a meet and confer regarding these requests. If, after the meet and confer, plaintiffs have not received adequate responses, the plaintiffs may file a motion to compel within thirty days from the date of the meet and confer.

**H.     Emails That Refer To Plaintiffs**

Plaintiffs' requests Nos. 156 and 158 seek emails that refer to the plaintiffs and were either

16

received or sent by individuals on a list.  (#225).  This list was narrowed on June 13, 2011, to include only individuals that participated in the discrimination, benefitted from it, or were the subject of discrimination.  *Id.*  Defendants contend that the parties were going to meet and confer regarding these issues on October 28, 2011.  (#231).  Plaintiffs did not mention the meet and confer in their reply (#233).  If an agreement was not reached, the plaintiffs may file a motion to compel within fourteen days from the entry of this order.

### I.    Other Acts of Discrimination

In plaintiffs' request No. 162, they seek all memorializations given in relation to any conduct or behavior directed towards plaintiffs and/or employees Roberts, Triplow, McShane, Scali, Sparks, Kudilkova, Facello, Struck, and Boice.  (#225).  Defendants stated that they were unable to produce any documents relating to the non-plaintiffs, because they have no information evidencing any claim of sexual or other harassment by those individuals.  (#231).  Once again, plaintiffs do not mention this in their reply (#233), except for referencing, in a footnote, Mrs. Triplow's alleged harassment complaint. The defendants and their attorneys shall file a certification within fourteen days from the entry of this order confirming that the requested documents are unable to be produced because such documents do not exist.

### J.    Misuse Of Company Funds

Plaintiffs seek information relating to the use of Wyndham credit cards, funds, or business accounts, including but not limited to "SPIF" accounts, of certain individuals.  (#225).  Defendants provided nothing in response to this request.  (#225).  Defendants argue that the request is over broad, as it seeks information relating to fifty individuals, some of whom are not alleged to have engaged in any sexual harassment or discrimination.  (#231).  The court recognizes that there are allegations that male supervisors and managers were able to use company funds to finance certain expenses not related to work, but related to sexual relationships.  The court will narrow this request to information pertaining to individual male managers and supervisors who are named in the complaint, either as a defendant or

1    in the body of the complaint.  Defendants shall provide the same within fourteen days from the entry

2    of this order.

3              Accordingly, and for good cause shown,

4              IT IS ORDERED that defendants' Motion For Protective Order Regarding Deposition of Third-

5    Party Rich Folk (#198) is GRANTED in part and DENIED in part, as discussed above.  Mr. Folk's

6    deposition shall be conducted and the transcript shall be designated confidential pursuant to the existing

7    confidentiality order and remain sealed unless the court orders otherwise.

8              IT IS FURTHER ORDERED that defendants' Motion To Designate Confidential Material

9    (#222) is GRANTED.  The document, and any motion and/or document containing it shall remain

10   confidential, in accordance with the court protective order.

11             IT IS FURTHER ORDERED that plaintiffs' Affidavit of Fees and Costs (#210) is GRANTED

12   in part and DENIED in part, as discussed above.  Sanctions in the amount of $7,500 are awarded.

13   Defendant Wyndham WorldWide Corporation shall issue a check in the amount of  $5,000, and Littler

14   Mendelson shall issue a check in the amount of $2,500.  Checks shall be delivered within fourteen days

15   from the entry of this order.

16             IT IS FURTHER ORDERED that plaintiffs' Motion To Compel (#225) is GRANTED in part

17   and DENIED in part, as discussed above.  The parties shall meet and confer as ordered above, within

18   fourteen days from the entry of this order.  Defendants shall produce the documents requested as ordered

19   by the court, within fourteen days from the entry of this order.  If either party deems it necessary to file

20   a motion to compel or a motion for protective order, they shall do so within thirty days from the entry

21   of this order.

22             DATED this 17th day of November, 2011.

23                                                    _____

24                                                    **CAM FERENBACH**
                                                     **UNITED STATES MAGISTRATE JUDGE**

25

26                                    18