UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

GENINE CANNATA, *et al.,*

              Plaintiffs,

v.

WYNDHAM WORLDWIDE CORPORATION, *et al.,*

              Defendant.

2:10-cv-00068-PMP -VCF

**O R D E R**

Before the court is plaintiffs Genine Cannata, *et al*'s Motion For District Judge To Reconsider Order (#234). (#241). Wyndham Worldwide Corporation, *et al* (hereinafter "Wyndham") filed an Opposition. (#245). After seeking leave of the court, plaintiffs filed a Reply (#254) in support of their motion and defendants filed a Sur-Reply (#257). The court held a hearing on February 16, 2012.

**Background**

On November 17, 2011, the court held a status conference on several pending motions (#198, #200, #222, and #225). The court issued two orders (#234 and #236). Pertinent to the instant motion, the court ordered Wyndham defendants to provide plaintiffs with specific information regarding the litigation hold, rather than ordering Rule 30(b)(6) testimony. (#234). The court also held that the plaintiffs could request that 20 custodial email accounts be searched utilizing 10 search terms to discover responsive ESI. *Id.* The plaintiffs expressed a concern with the limitations set by the court, and the court stated that it would be willing to sign a stipulation from the parties modifying the court's order with regard to the number of search terms and custodians. (#235).

On November 29, 2011, the plaintiffs emailed the defendants and requested that the parties meet and confer with experts to "delineate the parameters of email production in light of the [c]ourt's order." (#241). The parties held a telephonic meet and confer on December 1, 2011, and discussed the search

term reports and email production. *Id.* Following the meet and confer, plaintiffs requested that the defendants stipulate to modify the court's order (#234). *Id.* The plaintiffs' proposed stipulation would permit plaintiffs to supply a list of 50 search terms per custodian. *Id.* The defendants would provide a search term report in exchange, which would then be used by plaintiffs to create a final list of 30 search terms per custodian. *Id.* Defendants would not stipulate unless plaintiffs would first disclose specifics on search terms and custodians. *Id.* The parties met and conferred again on December 2, 2011, but the parties were unable to agree. *Id.* As reported during plaintiffs' oral argument, a major impediment to agreement on search terms was plaintiffs' request to include "terms of a sexual nature," which defendants refused. That issue is resolved later in this order.

On December 5, 2011, the plaintiffs filed the instant objection to the court's order (#234), which the clerk changed to characterize as a motion for district judge to reconsider (#234) order. (#241). The Wyndham defendants filed an opposition on December 22, 2011. (#245). Judge Pro issued an order on January 4, 2012, referring the instant motion (#241) to this court. (#247). On January 9, 2012, the court held a telephonic hearing to address supplemental briefing on the instant motion, and the court permitted plaintiffs to file a reply brief, no longer than eight pages, on or before February 6, 2012. (#252). The court also permitted defendants to file a sur-reply brief, no longer than eight pages, on or before February 13, 2012. *Id.* On February 6, 2012, plaintiffs filed a reply in support of their objection/motion to reconsider. (#254). On February 13, 2012, defendants filed their sur-reply. (#257).

While the plaintiffs' instant motion (#241) was pending, plaintiffs assert that they complied with the court's order (#234). On December 9, 2011, plaintiffs provided defendants with a list of 10 search terms and 20 custodians. (#245 Exhibit 23). Plaintiffs also asked defendants for the ability to review the "hits" once the search reports were generated, and to revise their list as necessary. *Id.* Defendants complied with that request. The parties held off further ESI discovery efforts, pending receipt of a decision on this motion.

...

**Motion For Reconsideration**

    **A.**    **Brief Summary Of The Parties' Positions**

In the instant objection/motion to reconsider, plaintiffs ask this court to amend its order (#234) with regard to the number of custodians and search terms, because (1) Rule 26 requires an initial assessment of burden before email discovery is substantially limited, (2) applying search term protocols from the patent context is a mistake, and (3) recent factual consideration also require order (#234) be amended. (#241). Plaintiffs propose to the court that the parties should engage in a process by which the plaintiffs supply an initial list of 100 search terms and 50 email custodians. *Id.* After receiving this list, Wyndham would then run the search terms through the custodians' email accounts and provide a search term "hit" report to the plaintiffs. *Id.* The initial search "hits" would be de-duplicated by Wyndham. *Id.* The search term report would identify how many documents were searched, and how many "unique" documents exist. *Id.* The plaintiffs would then use this information to assess the utility and burden associated with the terms, and would work collaboratively with Wyndham to restructure the terms and settle on a final list of terms and custodians, not to exceed 50 search terms and 35 custodians. *Id.*

During oral argument, plaintiff's counsel referred to this process as an "Iterative Process with Quality Control." Counsel argued that using this Iterative Process would enable the parties to recognize patterns of "False Positives." The search terms could be modified or exclusionary terms such as "But Not" could be used to increase the number of relevant documents identified and reduce False Positives. Defendants' counsel agreed that this proposed Iterative Process could render the ESI discovery process more efficient and would impose a decreased burden on the defendants. However, defendants asserted that plaintiffs were formulating their search terms in a manner to properly take advantage of the Iterative Process. Defendants argue that this process would be enhanced by the oversight of a Special Master.

Given the track record of both parties in this case, with regard to discovery in general and ESI discovery in particular, the Court finds that the appointment of a Special Master is required so that ESI

discovery can be completed in a timely fashion. This District does not have the judicial resources to devote the time of a District or Magistrate Judge to review and approve search terms so that the Iterative Process can proceed properly.

Wyndham defendants argue that the plaintiffs' proposed email production plans have been problematic from the beginning, and ask this court to deny the instant motion (#241). Defendants assert that denial is warranted, because (1) the motion is untimely, (2) the order was not clearly erroneous or contrary to law, (3) the court had a sufficient basis for limiting the search terms, (4) plaintiffs' proposal is unreasonable, and (5) the court's comparison to patent law is appropriate. (#245). Defendants assert that plaintiffs should bear the cost of additional search terms and custodians if the court permits the plaintiffs to increase the number of search terms and custodians. *Id.*

The Wyndham defendants also assert that the plaintiffs' December 9, 2011 search term list violated the court's order (#234), which specifically required narrow search terms tailored to particular issues, the use of names with narrowing terms, and only permitted 10 search terms, which should avoid using "or" if at all possible. (#257). Defendants recommend that if the court is inclined to increase the number of search terms/custodians, the court should appoint "an e-Discovery Special Master to assist the parties in selecting appropriate search terms that are likely to yield fewer "noise" documents and more responsive documents (that are not duplicative of documents already produced)." *Id.* As noted above, the Court finds that a Special Master is required in this case, regardless of the number of search terms ultimately employed.

**B.    Relevancy**

The parties both address the issue of whether sexual terms are relevant to the action and whether such terms should be included in the plaintiffs' proposed search term list. In plaintiffs' motion to reconsider, they assert that "[p]laintiffs have reason to believe that defense counsel has ran (sic) search hits reports and specifically excluded terms of a sexual nature from the report it produced," and that "Wyndham should be required to produce emails that contain search terms of a sexual nature that they

4

1 are aware exist and that are responsive to Plaintiffs' document requests." (#241). In response,
2 Wyndham defendants assert that plaintiffs are not even able to "identify the basis for searching emails
3 for sexual terms," and that when Wyndham defendants "reviewed the complaint and six of the plaintiffs'
4 deposition transcripts to determine which sexual terms had a connection to this case," many of
5 plaintiffs' selected sexual terms were absent from the complaint and deposition transcripts. (#245).

6       Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding
7 any nonprivileged matter that is relevant to any party's claim of defense..."  Relevance within the
8 meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer*
9 *Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means
10 only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence.
11 *Id*.

12       Additionally, this rule allows the Court, for good cause shown, to "order discovery of any matter
13 relevant to the subject matter involved in the action." Federal Rule of Civil Procedure 26(b)(1). Given
14 the nature of the claims, good cause exists to order defendants to allow search terms of a sexual nature
15 to be used in the e-Discovery searches. Communications between executives, although not directed to
16 the plaintiffs, which evidence the existence or nature of a sexual atmosphere in the workplace, during
17 relevant periods, may be admissible at trial or lead to the discovery of admissable evidence.

18       Plaintiffs in this action are alleging claims of sexual discrimination, sexual harassment, hostile
19 work environment, constructive discharge, and retaliation. (#1-1). With regard to sexual harassment
20 and/or hostile work environment claims, the Supreme Court has held that the court must consider the
21 totality of the circumstances surrounding the alleged victim's experience. *See Oncale v. Sundowner*
22 *Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998)(holding that "[t]he real social impact of workplace
23 behavior often depends on a constellation of surrounding circumstances, expectations, and relationships
24 which are not fully captured by a simple recitation of the words used or the physical acts performed,"
25 and that the court should consider "all the circumstances" surrounding the allegations.).

26

1  Thus, the court finds that ESI containing sexual terms is discoverable. It is relevant to plaintiffs'
2  claims and relevant to the subject matter involved in this action. Good cause exists for such terms to
3  be included in the plaintiffs' search term list. *See* Fed. R. Civ. P. 26(b)(1); See also *Oppenheimer Fund*,
4  437 U.S. at 351; *Oncale*, 523 U.S. at 81-82.

**C.    e-Discovery**

Pursuant to Local Rule IB 3-1, a district judge may reconsider any pretrial matter referred to a magistrate judge, if the party requesting consideration can demonstrate that the magistrate judge's ruling is "clearly erroneous or contrary to law." The plaintiffs' motion for reconsideration (#241) was referred to this court by District Judge Phillip M. Pro on January 4, 2012. (#247). This court finds that based on the unsuccessful efforts of the parties to work together with regard to the production of ESI, appointing a Special Master to oversee this process is appropriate. A court may appoint a Special Master to "address pretrial and post trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C).

The Special Master in this action will supervise the discovery of ESI, which will include searching emails and other electronically stored data. This supervision will include, without limitation, approving search terms, determining the number of search terms, refining search terms and allocating responsibility for the costs of e-Discovery as follows.

The parties will work together to implement a iterative process for finalizing the search terms and custodian/data sites list, whereby the plaintiffs can initially propose up to 30 search terms to be used in searching up to 30 e-mail custodian accounts or other defined data storage sites. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as a defendant's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g. "and") narrows the search and shall count as a single term. A disjunctive combination of multiple words or phrases (e.g. "or") broadens the search, and each word or phrase shall count as a separate search term unless they are

variants of the same word. Each disjunctive combination of analogous words shall be delimited by parentheses. Use of narrowing search criteria (e.g. "and," "but not," "w/x") is encouraged to limit the production.

After the plaintiffs provide defendants with their initial 30 search terms for 30 accounts or sites, defendants shall produce search reports. Under the supervision of the Special Master, the parties shall work together in good faith to refine the search terms, and agree on a final list of 20 search terms and 20 e-mail custodians and/or data sites.

As long as the final set of search terms and sites searched combined does not exceed 40, plaintiffs will not be required to reimburse defendants for their costs of e-Discovery compliance. If, however, the combined total of final search terms and sites exceeds 40, for each extra search term or site, the plaintiffs will reimburse defendants for 5% of their e-Discovery compliance costs from the date of this order through the end of discovery. For example, if the final searches conducted involve 22 search terms and 25 sites, Plaintiffs will be responsible for 35% (7 x 5%) of defendants' e-Discovery compliance costs. All costs fairly attributable to the searches, negotiations, document review, copying, including time devoted by law firm employees and client employees will be included in e-Discovery compliance costs. In no event shall the combined total of final search terms and custodial accounts/data sites exceed 50.

Initially, all email correspondence produced shall include all metadata. All other ESI shall be produced in the form of searchable images, including only metadata fields showing the date and time the document was created and revised, as well as where it was stored. The Special Master may order production of metadata associated with non-email ESI upon a showing of good cause.

At the conclusion of e-Discovery, the Special Master will file a report with the court stating how many search terms and search sites were used in the final retrieval and production of documents. If the combined total exceeds 40, the Special Master will also report the defendants' total e-Discovery compliance costs from the date of this order and the amount allocated to plaintiffs. That amount will

be payable to defendants' counsel withing 10 days after filing of the report. The Special Master may require plaintiffs to deposit funds with defense counsel to cover all or a portion of the Special Master's estimate of plaintiffs' share of ESI costs, before the final search results are disclosed to plaintiffs.

Plaintiffs will be required to pay 1/3 of the Special Master's fees and costs. The Special Master shall provide, to both sides, timely statements of his/her fees and costs, allocating 2/3 to defendants and 1/3 to plaintiffs. Each side shall pay their share of the fees and costs within 30 days of receipt of the Special Master's invoice.

The Special Master will resolve any dispute between the parties relating to this process, search terms, and/or custodians/data sites, and will implement a schedule for the ESI discovery to insure that the ESI discovery is completed in time to permit the completion of all discovery before the final the discovery cut-off date of September 10, 2012. Rule 53(b)(1) provides that the court "must give the parties notice and an opportunity to be heard" with regard to appointing a Special Master, and that "[a]ny party may suggest candidates for appointment." Fed. R. Civ. P. 53(b)(1).

During the hearing held before this court on February 16, 2012, the court stated that it was inclined to appoint a Special Master, and heard arguments from counsel. Plaintiffs asserted that they oppose appointing a Special Master, and defendants agree with the court that appointing a Special Master would be beneficial and would assist the parties in successfully completing discovery of ESI. The parties shall meet and confer in an attempt to agree on an individual to be appointed as Special Master, and, within seven days from the date of this order, shall submit to the court the name, contact information and resume of an agreed upon Special Master or a report stating that they could not agree. *See* Fed. R. Civ. P. 53(b)(1)(permitting parties to suggest candidates). If the parties are unable to agree on a Special Master, the court will select and appoint a Special Master.

**Discovery Plan and Scheduling Order**

During the hearing on February 16, 2012, the court indicated that it was concerned with the current discovery plan and scheduling order, which set June 11, 2012, as the last date to designate

experts, July 11, 2012, as the last date to designate rebuttal experts, and a discovery deadline of August 10, 2012. (#253). The court will be issuing a FINAL discovery plan and scheduling order providing for a discovery deadline of September 10, 2012.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiffs Genine Cannata *et al*'s Motion For District Judge To Reconsider Order (#241) is GRANTED in part and DENIED in part, as discussed above.

IT IS FURTHER ORDERED that the parties shall submit to the court the name, contact information and resume of an agreed upon Special Master within seven days from the entry of this order, together with suggestions regarding the terms to be included in the Special Master's Order of Appointment.

DATED this 17th day of February, 2012.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

9